**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**LORENZO ALLEN THOMAS,**

      **Plaintiff,**

                        **Case No. 2:23-cv-1474**

    **vs.**                              **Judge Edmund A. Sargus, Jr.**

                                  **Magistrate Judge Elizabeth P. Deavers**

**CITY OF CIRCLEVILLE,**
*et al.*,

      **Defendants.**

## INITIAL SCREEN REPORT AND RECOMMENDATION

Plaintiff, Lorenzo Allen Thomas, has filed an action alleging violations of his civil rights under 42 U.S.C. §§ 1983 and 1985. Thomas is proceeding in this action without counsel and has been granted leave to proceed *in forma pauperis.* (ECF No. 3.)  The matter is currently before the undersigned Magistrate Judge to conduct the initial screen required by law to identify cognizable claims and to recommend dismissal of Plaintiff's Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(a); 28 U.S.C. § 1915(e)(2).  Having completed the initial screen, Thomas **MAY PROCEED** on his First Amendment retaliation claim brought pursuant to 42 U.S.C. § 1983 against Defendants Davis, Speakman, and Farrelly in their individual capacities and on his Ohio state law claim brought pursuant to O.R.C. § 2307.60. The Undersigned **RECOMMENDS** that the Court **DISMISS** Plaintiff's remaining claims for failure to state a claim on which relief may be granted.

**I.**

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent."  *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'"  *Id.* at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)).  To address this concern, Congress included subsection (e)[1] as part of the statute, which provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--
>
> \*     \*     \*
>
> (B) the action or appeal--
>
> (i) is frivolous or malicious;
>
> (ii) fails to state a claim on which relief may be granted; or . . . .

28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Denton*, 504 U.S. at 31.  Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted.

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a).  *See also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)).  Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the

---

[1]Formerly 28 U.S.C. § 1915(d).

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd*., *P'Ship v. Flagstar Bank*, *F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted). Further, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cnty. Sheriff's Dep't.*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits; "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

## II.

Plaintiff names as Defendants the City of Circleville; the Circleville Police Department ("CPD"); Ryan Speakman ("Speakman"), in his individual and official capacity as an employee of the CPD; Jon Farrelly ("Farrelly"), in his individual and official capacity as an employee of the CPD; and Doug Davis ("Davis"), in his individual and official capacity as Chief of Police, an employee of the CPD.

Thomas sets forth the following allegations in his Complaint.  (EECF No. 1-1.)  In 2023, Thomas filed a complaint with the Pickaway County Health Department ("PCHD") asserting that his landlord was violating city health and safety codes, thereby causing a substantial risk of harm to Plaintiff and his family.  (*Id.* at ¶ 8.)  PCHD undertook an investigation and forwarded a signed affidavit to the City of Circleville recommending that a Notice of Violation be sent to the landlord with a request that the violation be corrected.  (*Id.* at ¶ 9.)  PCHD subsequently advised Plaintiff and his girlfriend that the City would not be taking any action against the landlord at that time because an eviction action relating to the property was pending.  (*Id.*)

Upon learning that the City would not enforce the violation notice, Thomas went to the Circleville Police Department and requested to speak to Code Enforcement believing he needed to speak to Officer Speakman.  (ECF No. 1-1 at ¶ 10.)  Thomas was directed to the City Administration office.  (*Id.*)  Thomas went to the City Administration office and requested to speak with a Code Enforcement Officer regarding enforcement of health and safety violations against a landlord.  (*Id.* at ¶ 11.)  Thomas "demanded" to speak to a supervisor so that he could file a complaint against the City for the failure to take action against his landlord.  (*Id.* at ¶ 12.)  Thomas began documenting his interaction at the City Administration office by video on his phone.  (*Id.* at ¶¶ 13-15.)  Officers Speakman and Farrelly arrived at the administration building.

4

(*Id.* at ⁋ 14.) Thomas and these officers engaged in a "verbal confrontation." (*Id.* at ⁋ 16.) Thomas accused Officer Speakman of lying, police misconduct, and corruption. (*Id.*) Thomas's claims of Speakman's corruption and police misconduct arose from a previous incident involving Thomas's girlfriend and children. (*Id.* at ⁋ 17.) Thomas began live streaming his allegations about the officers and the City on Facebook. (*Id.*)

The following day, Officers Speakman and Farrelly arrived at Thomas's home and stated that they were there to conduct a child welfare check. (ECF No. 1-1 at ⁋⁋ 18-19.) Thomas "challenged" the officers' "true intentions," again documenting the interaction by video recording on his cell phone. (*Id.* at ⁋ 19.) When Thomas began recording and "challenging the officers' conduct," Officer Speakman dispatched "CPS" (presumably, Child Protective Services) to Plaintiff's home. (*Id.* at ⁋ 20.) When "CPS" arrived, Officers Speakman and Farrelly "falsely fabricated" that Thomas's children were being neglected because there was no running water or electricity in the home. (*Id.* at ⁋ 21.) These statements were made despite the officers' knowledge that Thomas and his girlfriend had complained about the landlord's refusal to make repairs to unsafe and unhealthy living conditions. (*Id.*) Officer Speakman stated that "their actions were because comments made by Thomas about CPD being corrupt." (*Id.* at ⁋ 22.) Officer Speakman read Thomas his Miranda rights and Thomas "retreated inside his home" until the officers left. (*Id.*) Although Officers Speakman and Farrelly claimed they were at Thomas's home for a wellness check relating to the children, they did not contact CPS until after Thomas began questioning them and the officers did not inspect the home prior to calling CPS. (*Id.* at ⁋ 23.)

A few days later, the Pickaway County building inspector arrived at Thomas's home accompanied by an officer from CPD. (Complaint, ECF No. 1-1 at ⁋ 24.) The officer did not

turn on his body cam until he and the building inspector approached Thomas's door and neither

the officer nor the building inspector asked Thomas any questions. (*Id*.)   The building inspector

advised that he was there to investigate Thomas's allegations regarding the landlord but he did

not inspect the property, take pictures, or request to enter the home.  (*Id*.at ¶ 25.)  Despite the

building inspector's statement that he would return to the home to answer Thomas's questions,

he has not.  (*Id*.)  On April 20, 2023, the health department contacted Thomas by letter alerting

him that the landlord had again been advised of the notice of violation. (*Id*.)  No officials have

inspected the home even though Defendants had "felt it was necessary" to contact CPS "in an

attempt to remove the children from the home under a[n] emergency removal without a court

order because of the conditions of the home."  (*Id*.)

 Based on these allegations, in Count I Thomas alleges that Defendants Davis, the City of

Circleville and the CPD (these latter Defendants referred to collectively in the Complaint as the

"Municipal Defendants") engaged in a "custom, practice and/or policy of deliberate indifference

to the constitutional and statutory rights violations committed against Plaintiff."  (Complaint

ECF No. 1-1 at ¶¶ 26-48.)  In Count II, Thomas asserts a claim against Defendant Davis under a

supervisory liability theory pursuant to both 42 U.S.C. ¶¶ 1983 and 1985.  (*Id*. at ¶¶49-57.)  In

Count III, Thomas brings a retaliation claim pursuant to 42 U.S.C. 1983 and 1985 against

Defendants Speakman, Farrelly, and Davis alleging violations of his First, Fourth, and

Fourteenth Amendment rights.  (ECF No. 58-61.)  In Count IV, Thomas alleges that Defendants

Speakman and Farrelly provided a false statement/affidavit for probable cause in violation of his

First, Fourth, and Fourteenth Amendment rights.  (ECF No. 1-1 at ¶¶ 62-72.)   In a separate

count, also identified as Count IV, Thomas asserts that Defendants Speakman, Farrelly, Davis

and the CPD made false statements/allegations in violation of the First, Fourth, and Fourteenth

Amendments and a false report of child abuse or neglect in violation of Ohio Revised Code ("O.R.C.") 2921.14.  (ECF No. 1-1 at ¶¶ 73-79.)  In his final three counts, Counts VI, VII, and VIII, Thomas asserts state law tort claims under O.R.C. § 2307.50 and § 2307.60 and a state law conspiracy claim arising from these same alleged circumstances.  (*Id.* at ¶¶ 80-91.)

By way of relief, Thomas seeks a declaratory judgment that Defendants violated his rights under federal and state law; an injunction prohibiting the CPD and the City of Circleville from retaliating against individuals for asserting their constitutional and statutory rights and ordering CPD to "establish [an] effective preventative mechanism to ensure Pickaway County resident[s'] constitutional and statutory rights are not violated in the future," i.e. the "right to  fair and unbiased grievance procedures through an external independent ombudsman organization"; $1.5 million in compensatory damages; and punitive damages.

### III.

### A.  Claims Against the Circleville Police Department (Counts I, IV, VI, VII and VIII)

As an initial matter, Defendant Circleville Police Department is not a proper party.  It is well-settled that police departments are not *sui juris*, meaning they are not separate legal entities under Ohio law that can sue or be sued. *See Carmichael v. City of Cleveland*, 571 F. App'x 426, 435 (6th Cir. 2014) (finding that "under Ohio law, a county sheriff's office is not a legal entity that is capable of being sued"); *Renz v. Willard Police Dep't*, 2010 WL 3789563, at *2 (N.D. Ohio 2010) ("A municipal police department is not *sui juris* and suits against such entities are construed as brought against the municipality itself, because a judgment against a municipal police department imposes liability on the municipality.").  In this case, Thomas has also named the City of Circleville as a Defendant.  Thus, any causes of action directed to the Circleville Police Department are "absorbed into" Plaintiffs' claims against Defendant City of Circleville.

*Id. Renzi, at \*2*. Accordingly, it is **RECOMMENDED** that Thomas's claims against the Circleville Police Department be **DISMISSED**.

### B. Claims Under 42 U.S.C. § 1985 (Counts II and III)

In two separate counts, Thomas alleges a violation of 42 U.S.C. § 1985. The first count, Count II, is addressed only to Defendant Davis. In the second count, Count III, Thomas alleges that Defendants Speakman, Farrelly, and Davis acted "together and individually" to retaliate against him for his exercise of certain constitutional rights.

Initially, Thomas does not articulate under which subsection of Section 1985 he seeks relief. It is clear, however, that subsections (1) and (2) of Section 1985 do not apply. Subsection (1) is inapplicable because Thomas does not allege a conspiracy to interfere with federal officers in the performance of their duties. *See* 42 U.S.C. § 1985(1). Subsection (2) also is inapplicable because Thomas does not allege that Defendants either conspired to influence parties, witnesses, or jurors in federal court proceedings or to interfere with due process in state courts with the intent to deprive persons of their equal protection rights. *See* 42 U.S.C. § 1985(2). Accordingly, to the extent that Thomas's Complaint may be construed as attempting to invoke these subsections of 42 U.S.C. § 1985, the Undersigned **RECOMMENDS** that any such claims be **DISMISSED**.

Subsection (3) prohibits conspiracies to deprive individuals of their equal protection rights. *See* 42 U.S.C. § 1985(3). To state a claim under subsection (3), a plaintiff must first establish a conspiracy of two or more persons. *Atkins v. Fair*, No. 1:22-CV-910, 2023 WL 1960629, at \*8 (W.D. Mich. Feb. 13, 2023). "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Farmer v. Reece*, No. 3:19-cv-1189,

2020 WL 32512, at *2 (N.D. Ohio Jan. 2, 2020) (citing *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)). A "[p]laintiff must allege sufficient factual allegations to link the Defendants in the conspiracy and to establish the requisite 'meeting of the minds' essential to the existence of the conspiracy." *Id.* (citing *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (holding that plaintiff failed to state a claim for conspiracy pursuant to § 1985 for failure to allege a meeting of the minds)). Further to state a claim under § 1985(3) "a plaintiff must allege that there existed 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Courser v. Allard*, 969 F.3d 604, 618 (6th Cir. 2020) *(*quoting *Kush v. Rutledge*, 460 U.S. 719, 726 (1983)).

Thomas fails to set forth a claim under § 1985(3). First, he does not allege the existence of a conspiracy with any degree of specificity. Certainly, to the extent that he attempts to pursue a claim against Defendant Davis in Count II, he has not alleged a conspiracy of "two or more persons." Additionally, with respect to his claim directed to Defendants Davis, Speakman, and Farrelly in Count III, Thomas offers only the vague allegation that these Defendants acted "together." Moreover, Thomas has not alleged any actions undertaken by these Defendants based on racial, or other class-based, invidiously discriminatory animus. For these reasons, the Undersigned **RECOMMENDS** that Thomas's § 1985 claims be **DISMISSED**.

### C.   Official Capacity Claims

Thomas's claims against Defendants Speakman, Farrelly, or Davis in their official capacities, are construed as claims against their employer – *i.e.*, the City of Circleville. This is because official capacity suits "represent only another way of pleading an action against an entity

of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978).

Such official capacity claims are then subject to dismissal when the government entity also is named as a defendant. *Kouider on behalf of Y.C. v. Parma City Sch. Dist. Bd. of Educ.*, 480 F. Supp. 3d 772, 780 (N.D. Ohio 2020) ("When a § 1983 complaint asserts a claim against a government entity and a government official in his official capacity, federal courts will dismiss the official-capacity claim."); *see also Johnson v. Wash. Cnty. Career Ctr.,* No. 2:10-cv-076, 2010 WL 2570929, at *4 (S.D. Ohio June 22, 2010) ("Courts regularly dismiss as redundant claims against agents in the official capacities when the principal entity is also named as a defendant in the suit."). That is the situation here. Accordingly, the Undersigned **RECOMMENDS** that the Court **DISMISS** Thomas's claims against Defendants Davis, Speakman, and Farrelly in their official capacities as duplicative of claims against the City of Circleville.

### D. "Monell" Claim Against "Davis and Municipal Defendants" (Count I)

In Count I, Thomas purports to bring a claim against Defendant Davis, the City of Circleville, and the Circleville Police Department for "Unconstitutional Policies and Customs," specifically citing to *Monell,* 436 U.S. 658, in his Complaint. Initially, as explained above, the Circleville Police Department is not *sui juris* and Thomas's proposed claims against it are subject to dismissal. Further, Thomas's claims against Defendant Davis in his official capacity also are subject to dismissal as duplicative of his claims against the City of Circleville. To the extent that Thomas's Complaint could be construed as attempting to state a *Monell* claim against Defendant Davis in his individual capacity, "a *Monell* claim against a party in an individual capacity is 'improper.'" *Davis v. 36th Dist. Ct.,* No. 2:20-CV-12145, 2021 WL 2402083, at *4

10

(E.D. Mich. June 11, 2021) (quoting *Phillips v. City of Cincinnati*, No. 18-cv-541, 2019 WL 2289277, at *6 (S.D. Ohio May 29, 2019) ("[T]he [purpose] of *Monell* is to impose liability on a *municipality* under certain circumstances—not individuals.") (emphasis in original). Accordingly, the Court will construe Thomas's *Monell* claim as directed only to the City of Circleville.

"Local governing bodies can be sued under Section 1983 only where an official policy or custom causes the alleged constitutional violation." *Jackson v. City of Cleveland*, 622 F.Supp.3d 636, 641 (N.D. Ohio 2022) (citing *Johnson v. Hardin Cnty.*, 908 F.2d 1280, 1285 (6th Cir. 1990)). "There are four methods of proving an unlawful policy or custom: (1) showing an illegal official policy or legislative enactment; (2) demonstrating that an official with final decision-making authority ratified illegal actions; (3) showing a policy of inadequate training or supervision; or (4) demonstrating a custom of tolerance of or acquiescence to federal rights violations." *Simpkins v. Boyd Cnty. Fiscal Ct.*, No. 21-5477, 2022 WL 17748619, at *13 (6th Cir. Sept. 2, 2022) (citing *Wright v. City of Euclid*, 962 F.3d 852, 880 (6th Cir. 2020)). "An official policy includes 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated . . . .'" *Jackson,* at 641 (quoting *Johnson*, 908 F.2d at 1285).

Here, Thomas does not identify a "policy statement, ordinance, regulation, or decision officially adopted and promulgated." *Jackson,* 622 F.Supp.3d at 641. Rather, his *Monell* claim appears to rely on the City's alleged custom of tolerance or acquiescence of federal rights violations demonstrated by the failure to investigate or take disciplinary action against various personnel. These allegations suggest an attempt to assert a *Monell* claim under what has been deemed an "inaction theory." *Assi v. Hanshaw,* No. 1:20-CV-839, 2022 WL 4069194, at *19 (S.D. Ohio Sept. 2, 2022). To bring such a claim, a plaintiff must allege:

> (1) the existence of a clear and persistent pattern of illegal activity; (2) notice or constructive notice on the part of the defendant; (3) the defendant's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the defendant's custom was the 'moving force' or direct causal link in the constitutional deprivation.

*Id; see also Bickerstaff v. Cuyahoga Cnty.,* No. 1:18CV1142, 2020 WL 5626692, at *10 (N.D. Ohio Sept. 21, 2020) (confirming the elements necessary to state a *Monell* claim for a local government's custom or policy of failing to supervise, investigate, or discipline its employees).

Further, to "fairly subject a municipality to liability," a "custom must be so widespread as to have the force of law." *Lipman v. Budish*, 974 F.3d 726, 748 (6th Cir. 2020) (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403–04 (1997)).  This requires evidence of a pattern that is permanent and well settled. *Wright v. Louisville Metro Gov't*, No. 3:21-CV-308-BJB, 2022 WL 178591, at *4–5 (W.D. Ky. Jan. 19, 2022), *certificate of appealability denied,* No. 3:21-CV-308-BJB, 2022 WL 586777 (W.D. Ky. Feb. 25, 2022), and *appeal dismissed,* No. 22-5134, 2022 WL 18832277 (6th Cir. Oct. 7, 2022).  Moreover, this "pattern" requirement implies repetition of similar events. *Id.* (citing *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) ("a custom . . . claim requires a showing that there was a pattern of . . .  similar claims"). That is, "this standard requires 'multiple earlier inadequate investigations' of 'comparable claims' to establish a 'link between' the local entity's failure to investigate and the plaintiff's injury." *Rodgers v. Cnty. of Oakland*, No. 18-12832, 2021 WL 5280075, at *7 (E.D. Mich. Nov. 12, 2021) (citing *Pineda v. Hamilton Cnty.*, 977 F.3d 483, 495 (6th Cir. 2020) (citation omitted).)  Thus, a "custom of tolerance" claim cannot be based only upon a single incident involving the plaintiff.  *Id.* "To do so risks 'collapsing . . .  the municipal liability standard into a simple *respondeat superior* standard.'" *Nouri v. Cnty. of Oakland*, 615 F. App'x 291, 296 (6th Cir. 2015) (citing *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007)).

Thomas has not alleged a widespread pattern.  At best, Thomas alleges various iterations of the following conduct directed solely to him:  the City of Circleville maintained a policy of deliberate indifference to constitutional and statutory rights violations (ECF No. 1-1 at ⁋ 28); it took no action in response to known violations of such rights by various, unidentified personnel (*Id*. at ⁋⁋ 29-31); and the City took no action directed to various, unidentified personnel and acquiesced, approved, participated in or failed to investigate incidents of retaliation and the use of false allegations and affidavits (*Id*. at ⁋⁋ 32-42).

To the extent that Thomas attempts to portray the City's conduct as more widespread, his allegations are wholly conclusory.  For example, he asserts that the City maintained a custom of "utilizing Pickaway County Job & Family Services to threaten, intimidate and make warrantless investigations" and to "execute or attempt to execute ex parte removal of the Plaintiff's children" against Pickaway County residences and Plaintiff" (*Id*. at ⁋⁋ 43-44); engaged in a custom of deliberate indifference to known violations of Pickaway County residents' rights (*Id*. at ⁋45); and engaged in a custom of concealing known violations of Plaintiff and Pickaway County residents' rights through retaliation, making false statements or allegations, and failing to investigate (*Id*. at ⁋⁋46-47).  These allegations, however, are not supported by any *facts* indicating that such conduct was "common and widespread."  Accordingly, Thomas has not adequately alleged that the City of Circleville engaged in a custom of tolerance or inaction with respect to unconstitutional behavior.

Finally, Thomas also suggests that the City "engaged in a custom, practice, and or policy of failing to supervise" various personnel "regarding allegations of child abuse, neglect and dependency to children."  (ECF No. 1-1 at ⁋ 47.)  "To impose liability under a failure-to-supervise theory, a plaintiff must show that: (1) the defendant government was aware, or on

notice, that its employees committed or were likely to commit constitutional violations; (2) it chose not to take corrective action with deliberate indifference to the consequences for individuals' constitutional rights; and (3) the lack of corrective action actually caused the alleged constitutional violation." *Kurzawski v. Branch Cnty.*, No. 1:21-CV-687, 2023 WL 2795507, at *5 (W.D. Mich. Jan. 23, 2023), *report and recommendation adopted sub nom. Kurzawski v. Cnty. of Branch*, No. 1:21-CV-687, 2023 WL 2785549 (W.D. Mich. Apr. 5, 2023) (citing *Mize v. Tedford*, 375 F. App'x 497, 500 (6th Cir. 2010)). Again, Thomas's conclusory allegations are unaccompanied by any factual allegations sufficient to set forth a plausible claim for liability under a failure-to-supervise theory.

For all of these reasons, it is **RECOMMENDED** that Thomas's *Monell* claims be **DISMISSED.**

### E. Supervisory Liability Claim Against Defendant Davis (Count II)

In Count II, Thomas expressly seeks to hold Defendant Davis responsible for constitutional violations under a theory of supervisory liability. Thomas alleges that Defendant Davis, in his supervisory capacity, was aware of the allegedly unconstitutional actions taken by Speakman and Farrelly and failed to take any action in response. This claim fails.

"The scope of supervisory liability in § 1983 cases is limited." *Assi,* 2022 WL 4069194, at *16. "Generally, the doctrine of respondeat superior does not apply in § 1983 lawsuits to impute liability onto supervisory personnel." *Farmer v. Phillips*, No. 20-5730, 2021 WL 6210609, at *2 (6th Cir. Oct. 19, 2021). Instead, individuals sued in their personal capacity under § 1983 are liable only for their own unconstitutional behavior. *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011).

To establish a supervisor's liability, a plaintiff must show, "at the very least, 'that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Assi*, at *16 (quoting *Sexton v. Cernuto*, 18 F.4th 177, 185 (6th Cir. 2021) (quoting *Doe v. Claiborne Cnty.*, 103 F.3d 495, 511 (6th Cir. 1996)). "[S]upervisory liability will not attach based on a a mere failure to act.'" *Id*. (quoting *Crawford v. Tilley*, 15 F.4th 752, 762 (6th Cir. 2021)). Accordingly, because Thomas explicitly seeks to proceed against Defendant Davis under a supervisory liability theory, the Undersigned **RECOMMENDS** that this claim be **DISMISSED**.

### F. Remaining Federal Claims Against Defendants Davis, Speakman and Farrelly in their Individual Capacities

In Count III, Thomas asserts that Defendants Speakman, Farrelly, and Davis retaliated against him in violation of his First, Fourth, and Fourteenth Amendment rights. In Count IV, Thomas asserts that Defendants Speakman and Farrelly provided a false statement/affidavit for probable cause in violation of his First, Fourth, and Fourteen Amendment rights. In his second Count IV, Thomas asserts that Defendants Speakman, Farrelly, and Davis provided a false statement/allegations in violation of his First, Fourth, and Fourteenth rights. Reading these counts together, the gist of Thomas's allegations is that, after he exercised certain constitutionally protected rights, Defendants Davis, Speakman, and Farrelly retaliated against him. This retaliation took the form of making "false statements and material omissions in an affidavit," in a police report, and to a PCJFS employee and the initiation of a child abuse/neglect investigation. For ease of discussion, rather than address Thomas's alleged constitutional violations by Count, the Undersigned will address them by Amendment, setting forth the distinct elements of recognized causes of action relevant to each one.

15

### 1. First Amendment Claim

Turning first to Thomas's retaliation claim against all three Defendants, as alleged here, such a claim properly is analyzed under the First Amendment.  This claim requires a plaintiff to establish three elements: "(1) [he or she] engaged in constitutionally protected speech, (2) an adverse action taken against [him or her] caused an injury that would chill a person of ordinary firmness from continuing the speech, and (3) that action was motivated at least in part by the protected speech." *Clark v. Stone*, 998 F.3d 287, 302–03 (6th Cir. 2021) (citing *Ryan v. Blackwell*, 979 F.3d 519, 526 (6th Cir. 2020)).

In support of the first prong, Thomas claims a constitutional right to peacefully protest the misconduct of City officials (ECF No. 1-1 at ₽ 59); film government officials (*Id*. at ₽ 60); and to familial and intimate association (*Id*. at ₽ 61).  With respect to grievances against the government, Thomas claims that he "expressed his concerns" that a proper investigation of his landlord would not be undertaken "because of Officer Speakman."  (ECF No. 1-1 at ₽ 16.) Further, he asserts that he "spoke out about his treatment and action by the City of Circleville and CPD officers and made police misconduct and corruption claims."  (*Id*. at ₽ 17.)  "[T]he right to criticize public officials is clearly protected by the First Amendment."  *Abdulsalaam v. Franklin Cnty. Bd. of Comm'rs*, 637 F. Supp. 2d 561, 579 (S.D. Ohio 2009), *aff'd*, 399 F. App'x 62 (6th Cir. 2010) (quoting *Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 586 (6th Cir.2008)).

Thomas also claims that he was exercising his right to film government officials.  Several circuit courts and at least one court in this district have held that the First Amendment protects the public's right to film police and other government agents subject to reasonable restrictions. *Freeman v. Spoljaric*, No. 1:22-CV-203, 2023 WL 2743764, at *16 (S.D. Ohio Mar. 31, 2023)

(citing cases).  Accordingly, to the extent Thomas seeks to state a First Amendment claim based on his exercise of these rights, he has satisfied the first prong of a retaliation claim.

Thomas also asserts that he was retaliated against for exercising his right to familial and intimate association.  "The 'freedom of intimate association' protected by the Constitution is 'a privacy interest derived from the Due Process Clause of the Fourteenth Amendment but also related to the First Amendment.'" *Phillips v. Price*, No. CV 5:19-185-JMH, 2021 WL 3610039, at *3 (E.D. Ky. Aug. 13, 2021) (quoting *Anderson v. City of LaVergne*, 371 F.3d 879, 881 (6th Cir. 2004)); *see also Murray v. City of Elizabethton, Tennessee*, No. 2:21-CV-123-TAV-CRW, 2023 WL 2530936, at *10 (E.D. Tenn. Mar. 15, 2023) (freedom of intimate association "includes associations within family life and is protected under the Due Process Clause of the Fourteenth Amendment.").  The Sixth Circuit has indicated that freedom of intimate association claims are better considered due process claims arising under the Fourteenth Amendment.  *Kolley v. Adult Protective Servs.*, 725 F.3d 581, 587 (6th Cir. 2013).  Nevertheless, "[w]here a plaintiff alleges that an adverse action was taken against them because they exercised their right to intimate association, courts have analyzed the claim under first amendment retaliation jurisprudence." *Hartwell v. Houghton Lake Cmty. Sch.,* No. 17-CV-10678, 2018 WL 925848, at *10 (E.D. Mich. Feb. 16, 2018), *aff'd,* 755 F. App'x 474 (6th Cir. 2018) *(*citing *Gaspers v. Ohio Dep't of Youth Servs.*, 648 F.3d 400, 414 (6th Cir. 2011); *Sowards v. Loudon Cty., Tenn.*, 203 F.3d 426, 432 (6th Cir. 2000); *Dohner v. Neff*, 240 F. Supp. 2d 692, 701 (N.D. Ohio 2002); *Adkins v. Bd. of Educ. of Magoffin Cty., Ky.*, 982 F.2d 952 (6th Cir. 1993)).  Accordingly, at this stage, Thomas has satisfied the first prong of a retaliation claim to the extent he relies on the exercise of his right to intimate association.

17

With respect to the second prong, construing all facts and inferences in Thomas's favor, he has alleged an adverse action in the form of a false report of child abuse or neglect made to CPS. The Sixth Circuit has recognized that conduct including "making a false report to Children Services . . . would chill a person of ordinary firmness from engaging in speech" and could therefore satisfy the adverse action requirement of a First Amendment retaliation claim. *Jenkins*, 513 F.3d at 589; *see also Wenk v. O'Reilly*, 783 F.3d 585, 594–95 (6th Cir. 2015).

Finally, with respect to the third prong, Thomas alleges that Speakman told him that Thomas was being investigated because of comments Thomas had made about the CPD being corrupt. (ECF No. 1-1 at ℙ 22.) Liberally construing his allegations, Thomas's complaints of police corruption both involved his filming and arose in the context of concern for his family. Thus, at this stage of the pleadings, without the benefit of the parties' briefing, Thomas **MAY PROCEED** on his First Amendment retaliation claim against Defendants Speakman, Farrelly, and Davis in their individual capacities.

## 2. Fourth Amendment Claim

Thomas also seeks to assert a claim under the Fourth Amendment against all three individual Defendants based on the alleged provision of false statements in an affidavit for probable cause. "A Fourth Amendment claim for fabrication of evidence lies where a defendant knowingly manufactures probable cause, thereby effecting a seizure." *Robertson v. Lucas*, 753 F.3d 606, 616 n.5 (6th Cir. 2014). "A 'seizure' occurs when police detain an individual under circumstances where a reasonable person would not feel free to leave." *United States v. Lopez-Medina*, 461 F.3d 724, 739 (6th Cir. 2006) (citing *United States v. Obasa,* 15 F.3d 603, 606 (6th Cir.1994)). Likewise, "[a] 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *Brown v. Battle Creek*

*Police Dep't*, 844 F.3d 556, 566 (6th Cir. 2016) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).

Thomas does not allege a seizure.  For example, Thomas sets forth no facts suggesting that his children were removed from his home.  *Chappel v. Adams Cnty. Children's Servs.,* No. 1:22-CV-747, 2023 WL 2568300, at *8 (S.D. Ohio Mar. 20, 2023) (quoting *Krantz v. City of Toledo Police Dep't*, 197 F. App'x 446, 453 n.5 (6th Cir. 2006) ("The removal of a child from his custodial parents' home is a seizure for Fourth Amendment purposes….")   At most, Thomas states that, after Defendants Speakman and Farrelly arrived at his home, he went outside to "record and document why the officers were at his home" and that he recorded and "challenged the officers['] true intentions."  (ECF No. 1-1 at ¶¶ 18-20.)   After CPS arrived and he witnessed Defendants Speakman and Farrelly allegedly fabricate claims of neglect, "he immediately refused to allow entry into his home."  (*Id*. at ¶ 22.)  According to Thomas, Defendant Speakman read him his *Miranda* rights and warned him to remain silent.  (*Id*.)  Thomas does not, however, allege that he did not feel free to leave at that point, stating only that "he felt there would be continued harassment."  (*Id*.)   Moreover, he states that following receipt of his *Miranda* rights, he "retreated inside his home until Speakman and Farrelly left."  (*Id*.)

Read liberally, Thomas's allegations also fail to suggest any other Fourth Amendment claim.  For example, "[a] false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff."  *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (quoting *Voyticky v. Village of Timberlake, Ohio,* 412 F.3d 669, 677 (6th Cir. 2005).  Thomas does not allege his arrest without probable cause.  At most, Thomas asserts that he was *threatened* with arrest without probable cause.  (ECF No. 1-1 at ¶ 69.)  Further, Thomas does not allege any facts suggesting that he was subject to a search.  *See United States v. May-*

*Shaw*, 955 F.3d 563, 567 (6th Cir. 2020) ("Under Fourth Amendment jurisprudence, there are two ways in which government action may constitute a search.").  More specifically, Thomas does not allege physical intrusion into a "constitutionally protected area" nor does he allege that a governmental official invaded an area where he had a "constitutionally protected reasonable expectation of privacy." [1] *Id.* (citations omitted).

Accordingly, it is **RECOMMENDED** that the Court **DISMISS** Thomas's Fourth Amendment claims.

### 3. Fourteenth Amendment Claims

"The Fourteenth Amendment's Due Process Clause forbids the State from 'depriv[ing] any person of life, liberty, or property, without due process of law.'"  *Howard v. Livingston Cnty., Michigan*, No. 21-1689, 2023 WL 334894, at *11 (6th Cir. Jan. 20, 2023) (quoting U.S. Const. amend. XIV, § 1).  "The Clause has both a procedural and a substantive component."  *Id.* (citing *Doe v. DeWine*, 910 F.3d 842, 851 (6th Cir. 2018)).  Thomas's Complaint does not specify whether he is asserting a procedural due process claim, a substantive due process claim, or both.  As a result, the Undesigned will consider both components.

"[P]rocedural due process principles protect persons from deficient procedures that lead to the deprivation of cognizable liberty interests*."  Schulkers v. Kammer*, 955 F.3d 520, 539 (6th Cir. 2020).  To establish a violation of his procedural due process rights, Thomas must show "(1) that [he] was deprived of a protected liberty or property interest, and (2) that such deprivation occurred without the requisite due process of law."  *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 722–23 (6th Cir. 2011).

---

[1] Thomas alleges in connection with a state law claim in Count VI that he "suffered an invasion of [his] private activities within his private residence," ECF No. 1-1 at ⁋ 82, but provides no facts to support that allegation.

Thomas alleges that Defendants Speakman and Farrelly interfered with his "right to raise, be part of, and maintain family." (ECF No. 1-1 at ¶ 69.) There is no question that parents have a due process right to familial integrity. *Schulkers*, 955 F.3d at 539–43; *see also Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 27 (1981)) (confirming a parent's well-established right "to the companionship, care, custody and management of [their] children."). The Sixth Circuit has "consistently held that 'the Constitution recognizes . . . a substantive fundamental right to raise one's child.'" *Id.* (quoting *Bartell v. Lohiser*, 215 F.3d 550, 557 (6th Cir. 2000)). Further, the Sixth Circuit and other courts have consistently held that this substantive right triggers protections of the procedural due process clause. *Schulkers*, at 542 (citing *Bartell*, 215 F.3d at 557).

In his Complaint, however, Thomas merely cites the existence of this liberty interest. That is not enough. Rather, Thomas must allege "that a state actor 'deprive[d]' [him] of this interest—as the Due Process Clause's text requires. U.S. Const. amend. XIV, § 1." *Hoogland v. City of Maryville, Tennessee*, No. 21-5863, 2022 WL 1773416, at *8 (6th Cir. June 1, 2022) (citations omitted). Typically, this would require an allegation that "a state has used its coercive power to physically limit a parent's custody." *Id*. (citing *Schulkers,* 955 F.3d at 540–42; *Siefert v. Hamilton County*, 951 F.3d 753, 757–59, 766–67 (6th Cir. 2020)). Thomas, however, does not allege the loss of custody either temporarily or permanently, let alone without due process. Thus, Thomas has set forth no facts suggesting that Defendants' actions led to any state-sanctioned deprivation of his rights to the custody or care of his children. As a result of this failure, Thomas's claim lacks merit. *Id*. Accordingly, it is **RECOMMENDED** that any procedural due process claims against Defendants Speakman, Farrelly and Davis be **DISMISSED.**

Turning to the issue of substantive due process, it provides that, "irrespective of the constitutional sufficiency of the processes afforded, government may not deprive individuals of fundamental rights unless the action is necessary and animated by a compelling purpose." *Schulkers,* 955 F.3d at 539.  To prove such a claim under ℙ 1983, Thomas "would need to establish either (1) 'deprivations of a particular constitutional guarantee,' or (2) government actions that 'shock the conscience.'" *Garner v. Harrod*, 656 F. App'x 755, 761 (6th Cir. 2016) (quoting *Pittman*, 640 F.3d at 728).  Substantive due process claims based on the right to family integrity require that the state official act with a "culpable state of mind directed at the [] family relationship." *Chambers v. Sanders*, 63 F.4th 1092, 1100 (6th Cir. 2023).  "Thus, many state actions with collateral effects on families are not constitutional violations." *Id.* (citing *Halley v. Huckaby*, 902 F.3d 1136, 1155 (10th Cir. 2018)).

Thomas does not allege a substantive due process violation under either prong.  Initially, Thomas has not alleged conduct that falls within the category of conscience shocking.  "[T]he 'shocks the conscience' standard sets a high bar. . . .  Conduct shocks the conscience if it violates the decencies of civilized conduct. Such conduct includes actions so brutal and offensive that [they do] not comport with traditional ideas of fair play and decency." *Range v. Douglas*, 763 F.3d 573, 589-90 (6th Cir. 2014) (internal citations and quotation marks omitted).  To be sure, there is difficulty in "'determining where conscience-shocking behavior resides on the continuum of actions.'" *Howard*, 2023 WL 334894, at *12 (quoting *Range,* at 590).  While merely negligent tortious conduct may be insufficient, "[c]onduct that is more akin to recklessness or gross recklessness, such as deliberate indifference, is a 'matter for closer calls.'" *Id.* (quoting *County of Sacramento v. Lewis*, 523 U.S.833, 849 (1998)).  Regardless, "the determination of whether conduct shocks the conscience 'depends upon the facts and

22

circumstances of the individual case.'"  *Id.* (quoting *Ewolski v. City of Brunswick,* 287 F.3d 492, 510 (6th Cir. 2002)).  "Thus, a government investigation of child abuse will not automatically implicate the right to familial association, absent 'evidence of bad faith, improper motive, or investigation tactics that 'shock the conscience.'"  *Kolley,* 725 F.3d at 585 (citations omitted).

In his Complaint, Thomas characterizes the alleged call to CPS as only "an *attempt* to remove the children from the home under an emergency removal without a court order."  (*Id.* at ¶ 25.)[2]  Thomas does not allege that his children were removed from his home or custody either temporarily or permanently as a result of the investigation.  At most, Thomas alleges an investigation relating to child neglect or abuse allegations arising from false reporting of a lack of running water or electricity in the home.  While he contends that these allegations were false, he also acknowledges that he had complained "about [the] landlord's refusal to make repairs concerning the unsafe electricity and forcing Thomas and his family to live in unsafe and unhealthy conditions."  (ECF No. 1-1 at ¶ 21.)  Thus, even accepting Thomas's allegations as true, the conduct alleged here was not so severe that it shocks the conscience or can be said to be arbitrary in the constitutional sense.

Moreover, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'"  *Sterling v. Vanbuskirk*, No. 1:22-CV-1057, 2023 WL 2236769, at *5 (W.D. Mich. Feb. 27, 2023) (citations omitted).  As explained above, Thomas claims that, after he

---

[2] To the extent that Thomas also intermittently uses language suggesting a separation, it is accompanied by language suggesting only an attempt.  (*See, e.g.*, *id*. at 64, 68, 75.)  Beyond this, Thomas fails to provide factual details suggesting the removal of the children from the family home.

exercised certain constitutionally protected rights, Defendants Davis, Speakman, and Farrelly retaliated against him. This retaliation took the form of making "false statements and material omissions in an affidavit," in a police report, and to a PCJFS employee and the initiation of a child abuse/neglect investigation. As the Undersigned already has concluded, based on these allegations, Thomas's First Amendment retaliation claim may proceed. Because the First Amendment provides an explicit source of constitutional protection for Thomas's retaliation claim, any substantive due process claim is subject to dismissal. *Id.* **Accordingly, it is RECOMMENDED** that any substantive due process claims against Defendants Speakman, Farrelly and Davis in their individual capacities be **DISMISSED.**[3]

Additionally, the Undersigned notes that some of Thomas's allegations suggest an attempt to assert his fabrication of evidence claim also under the Fourteenth Amendment. Courts recognize that such claims also may be brought under the Due Process clause of the Fourteenth Amendment as well as the Fourth Amendment as discussed above. *Salter v. Olsen*, 605 F. Supp. 3d 987, 1000 (E.D. Mich. 2022) (holding that a plaintiff may raise a claim for fabrication of evidence under the Fourth Amendment and Due Process Clause of the Fourteenth Amendment). Such a constitutional tort can be shown without proving that the state lacked probable cause. Nevertheless, under a Fourteenth Amendment analysis, "the relevant question … is whether the fabricated evidence affected the decision of the jury." *Jackson*, 925 F.3d at 816. Thomas's

---

[3] In *Howard*, 2023 WL 334894, the Sixth Circuit, in the context of a qualified immunity discussion, reviewed the applicable precedent and concluded that, under the specific facts of that case, the Plaintiff's substantive due process claim was not subsumed by the First Amendment right. The allegations in that case included the intentional conduct of an unfounded criminal investigation and prosecution, threats to the plaintiff's employment, and groundless criminal accusations. The Court characterized these allegations as the defendants' intentionally subjecting the plaintiff to "a sustained malicious prosecution." *Id*. at *13. Thomas's allegations here are distinguishable.

Complaint contains no allegations to support such a claim.   Accordingly, it is

**RECOMMENDED** that any fabrication of the evidence claim brought under the Fourteenth

Amendment be **DISMISSED.**

Finally, Thomas also appears to be complaining about the manner of Defendants'

investigation.  However, he has no constitutionally protected right to the manner in which any

criminal investigation is conducted. *Garner v. Harrod*, 656 F. App'x 755, 760–61 (6th Cir.

2016).  This is so even though at least one court has held that there is "a clearly established

constitutional due process right not to be subjected to criminal charges on the basis of false

evidence that was deliberately fabricated by the government." *Id.* (quoting *Devereaux v. Abbey*,

263 F.3d 1070, 1074–75 (9th Cir. 2001) (en banc)).  Here, as discussed above, Thomas has not

pled any facts suggesting that he was subjected to criminal charges.  For this reason, it is

**RECOMMENDED** that any claim relating to an alleged constitutionally protected right to the

manner in which any criminal investigation is conducted be **DISMISSED.**

### G.  State Law Claims

Finally, Thomas also asserts various state law claims.  In large part, the focus of these

claims is Thomas's attempt to hold Defendants civilly liable under Ohio law for alleged criminal

violations, including filing a false report of child abuse or neglect in violation of O.R.C. §

2921.14.  Indeed, Thomas cites to O.R.C. §2307.50 and § 2307.60, two statutes that allow for

civil actions relating to certain crimes.  The Undersigned will consider each claim individually.

### 1.  "State Tort for Interference with Parental Interest Pursuant to Ohio Revised Code 2307.50 (Plaintiff v. Speakman, Farrelly, Davis, and CPD)" (Count VI)

Section 2307.50 allows for a civil action for depriving an adult of parental or

guardianship interest in a minor, defined as a "child stealing crime" in violation of Ohio Rev.

Code sections 2905.01 (kidnapping), 2905.02 (abduction), 2905.03 (unlawful restraint), and 2919.23 (interference with custody) and section 2905.04 (child stealing) of an earlier version of the Code.  In a civil action pursuant to O.R.C. § 2307.50, "the trier of fact may determine that the minor was the victim of a child stealing crime and that the defendant committed the crime, regardless of whether the defendant has been convicted of or pleaded guilty to a child stealing crime." O.R.C. § 2307.50(C). Thomas does not allege a violation of any of these identified statutes.  The statute Thomas does cite, O.R.C. § 2151.31, relating to the "apprehension, custody, and detention" of a child is not a criminal statute.  Accordingly, it is **RECOMMENDED** that the Court **DISMISS** any claim that Thomas is attempting to state under O.R.C. § 2307.50.

### 2. "State Tort for Making or Causing False Report of Child Abuse or Neglect Pursuant to Ohio Revised Code 2921.14 (Plaintiff v. Speakman, Farrelly, Davis and CPD Defendants)" ((Second) Count IV)

Thomas also alleges that Defendants made or filed a false report of child abuse in violation of Ohio Rev. Code § 2921.14.   That statute provides:

> (A) No person shall knowingly make or cause another person to make a false report under division (B) of section 2151.421 of the Revised Code alleging that any person has committed an act or omission that resulted in a child being an abused child as defined in section 2151.031 of the Revised Code or a neglected child as defined in section 2151.03 of the Revised Code.

> (B) Whoever violates this section is guilty of making or causing a false report of child abuse or child neglect, a misdemeanor of the first degree.

O.R.C. § 2921.14 (West).  To the extent that Thomas may be attempting to state a cause of action pursuant to O.R.C. § 2921.14, that statute, standing alone, does not automatically create civil liability for its violation.  *Stewart v. Kahn*, No. 5:20-CV-2818, 2021 WL 2720618, at *3–4 (N.D. Ohio July 1, 2021) (citing *Disabilities/Deepwood*, No. 1:19-cv-2344, 2020 WL 5423966, at *9 (N.D. Ohio Sep. 9, 2020) ("'There is no automatic civil liability for violation of a criminal

statute.'") Thus, it is **RECOMMENDED** that any stand alone claim Thomas may be attempting to bring pursuant to O.R.C. § 2921.14 be **DISMISSED.**

### 3. "State Tort for Criminal Acts Pursuant to Ohio Revised Code 2307.60 (Plaintiff v. Defendants)" (Count VII)

Thomas, however, also seeks to set forth a claim under O.R.C. § 2307.60(A)(1) which provides in relevant part that "[a]nyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law[.]" O.R.C. § 2307.60(A)(1). Thomas's allegations are not limited to a violation of O.R.C. § 2921.14 based on a false report of child abuse. Thomas also alleges that Defendants have interfered with his civil rights in violation of O.R.C. § 2921.45. Further, he alleges that Defendants are guilty of complicity under § 2923.03 for aiding and abetting another to commit a criminal offense and conspiring with another to commit an offense in violation of the conspiracy statute, O.R.C. § 2923.01.

The Supreme Court of Ohio has held that "[b]y its plain and unambiguous language, O.R.C. 2307.**60 creates a civil cause of** action **for damages resulting from any criminal act**, unless otherwise prohibited by law." *Jacobson v. Kaforey*, 149 Ohio St. 3d 398, 2016-Ohio-8434, 75 N.E.3d 203, at ¶ 13 (emphasis added). The Supreme Court of Ohio later added that "the plain language does not require a criminal conviction as a prerequisite for civil liability." *Buddenberg v. Weisdack*, 161 Ohio St. 3d 160, 2020-Ohio-3832, 161 N.E.3d 603, at ¶ 11.

In light of these cases, both this Court and the Northern District of Ohio routinely acknowledge civil actions brought under O.R.C. § 2307.60. *See Est. of McConnell v. EUBA Corp.*, No. 3:18-CV-00355, 2021 WL 1966062, at *2 (S.D. Ohio May 17, 2021) ("The Ohio Revised Code provides compensatory and punitive damages for those injured by another party's

criminal act.") (citing O.R.C. § 2307.60 and *Buddenberg*); *Waters v. Pizza to You, LLC*, No. 3:19-CV-372, 2021 WL 229040, at *6 (S.D. Ohio Jan. 22, 2021) ("The Ohio Revised Code provides compensatory and punitive damages for those injured by another party's criminal act.") (citing O.R.C. § 2307.60 and *Buddenberg*); *Foster v. Health Recovery Servs., Inc.*, 493 F. Supp. 3d 622, 642 (S.D. Ohio 2020) ("Although Defendant is correct that several courts had previously required a conviction to state a claim for a civil action for a criminal act, the Ohio Supreme Court recently interpreted O.R.C. § 2307.60 and determined that 'the plain language of the statute does not require proof of an underlying criminal conviction'.  Accordingly, Plaintiff need not allege an underlying criminal conviction in order to state a claim for civil action for damages or a criminal act.") (internal footnote omitted) (citing *Buddenberg*); *see also FirstEnergy Corp. v. Pircio*, 524 F. Supp. 3d 732, 744 (N.D. Ohio 2021) ("Ohio law provides a civil cause of action for any person injured by a criminal act, even where the defendant has not been convicted of a crime.") (citing O.R.C. § 2307.60).

At the same time, O.R.C. § 2744.03(A) provides political subdivision immunity to employees in civil actions brought "to recover damages for injury, death, or loss to person or property allegedly caused by an act or omission in connection with a governmental or proprietary function." O.R.C. § 2744.03(A).   This statutory immunity extends to police officers unless, among other things, the officer's "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." O.R.C. § 2744.03(A)(6)(b).  Taking Thomas's allegations as true and construing all reasonable inferences in his favor, his allegations that Defendants Davis, Speakman and Farrelly acted in bad faith and with malicious intent in making false statements in the course of a child abuse investigation are sufficient, at least at this stage, to trigger the exception set forth in O.R.C. § 2744.03(A)(6).   Of course, this will be subject to proof but for

28

now, Thomas **MAY PROCEED** on his claim against Defendants brought under O.R.C. § 2307.60.

### 4.   "State Tort for Conspiracy (Plaintiff v. CPD, Speakman, Farrelly, and Davis)" (Count VIII)

Finally, Thomas seeks to bring a conspiracy claim under Ohio law.  In Ohio, a civil conspiracy consists of "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages."  *Bd. of Trustees of IBEW Fund Loc. No. 82 Pension Fund v. Bright St., LLC*, No. 3:16-CV-481, 2018 WL 4560828, at *5 (S.D. Ohio Sept. 21, 2018) (quoting *Morrow v. Reminger & Reminger Co. LPA,* 183 Ohio App.3d 40 (10th App. Dist. 2009)).  "Like its federal counterpart, a civil conspiracy under Ohio law 'must be pled with some degree of specificity, and vague and conclusory allegations that are unsupported by material facts will not be sufficient to state a claim.'" *Robertson v. University of Akron School of Law*, No. 5:20-CV-1907, 2021 WL 3709915, at *11 n.14 (N.D. Ohio Aug. 20, 2021), *aff'd sub nom. Robertson v. Univ. of Akron Sch. of L.,* No. 21-3768, 2022 WL 1836922 (6th Cir. June 3, 2022) (quoting *Avery v. Rossford, Ohio Transp. Improvement Dist*., 762 N.E.2d 388, 395 (Ohio Ct. App. 2001)); *see also Bright St.*, at *5.  As discussed above, Thomas has set forth only vague and conclusory allegations unsupported by material facts in support of any conspiracy claim.  Accordingly, it is **RECOMMENDED** that the Court **DISMISS** Thomas's state law conspiracy claim.

### III.

For the reasons set forth above, Thomas may proceed on his First Amendment retaliation claim brought pursuant to 42 U.S.C. § 1983 against Defendants Davis, Speakman, and Farrelly in their individual capacities and his Ohio state law claim brought pursuant to O.R.C. § 2307.60.

The Undersigned **RECOMMENDS** that the Court **DISMISS** Plaintiff's remaining claims for failure to state a claim on which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B).

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a forfeiture of the right to *de novo* review of by the District Judge and forfeiture of the right to appeal the judgment of the District Court.  Even when timely objections are filed, appellate review of issues not raised in those objections is forfeited.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . ." (citation omitted)).


                                         */s/ Elizabeth A. Preston Deavers*
**DATED:  May 31, 2023**              **ELIZABETH A. PRESTON DEAVERS**
                                      **UNITED STATES MAGISTRATE JUDGE**