## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**LORENZO ALLEN THOMAS,**

       **Plaintiff,**

           **Case No. 2:23-cv-1474**

    **v.**           **JUDGE EDMUND A. SARGUS, JR.**

           **Magistrate Judge Elizabeth P. Deavers**

**CITY OF CIRCLEVILLE, *et al.*,**

       **Defendants.**

### <u>OPINION AND ORDER</u>

This matter is before the Court on a Motion for Summary Judgment filed by Defendants the City of Circleville, Doug Davis, and Jon Farrelly (Mot., ECF No. 40) and a Motion for Summary Judgment filed by Defendant Ryan Speakman (Speakman Mot., ECF No. 42). Plaintiff Lorenzo Allen Thomas, who is proceeding without the assistance of counsel, opposed both Motions. (Opp., ECF No. 49; *see also* ECF No. 45.[1]) Defendant Speakman replied in support of his Motion. (Speakman Reply, ECF No. 50.) For the reasons below, the Court **GRANTS** Defendants' Motions for Summary Judgment (ECF Nos. 40, 42).

### BACKGROUND

This case arises out of an encounter between Mr. Thomas and police officers from the City of Circleville in March 2023. Although Mr. Thomas was not arrested, detained, or charged with an

---

[1] Mr. Thomas captions this filing as "Plaintiff's Objections and Motion to Strike Defendants Farrelly, City of Circleville and Doug Davis Motion for Summary Judgment." (ECF No. 45.) Mr. Thomas does not respond to the Motion for Summary Judgment but argues that the Court should strike it on procedural grounds. (*Id.* PageID 533, 538.) The Court thus construed it as a Motion to Strike, not a memorandum in opposition to the Motion for Summary Judgment, and denied the Motion. (*See* ECF No. 48.)

offense as a result of that encounter, he alleges that the police officers retaliated against him for speaking out against law enforcement on social media platforms.

## I.    Factual Background

In March 2023, Mr. Thomas lived at 359 Towne Street in Circleville, Ohio with his girlfriend Noella Greeno, the mother of his two younger children, Noella's brother Tyler and her mom and dad, as well as his four children, and the mother of his two older children, Heather Strough. (Thomas Dep., ECF No. 39, 11:17–24, 12:04–13:04.) Mr. Thomas and Noella had rented the property from landlord Richard Bigham for about six months or more and had experienced several issues with the landlord's maintenance of the property. (*Id.* 20:24–21:14.) Eventually, the issues with the property escalated to the point that the Pickaway County Health Department issued the landlord a clean-up order. (*Id.* 21:15–22:24.) The clean-up order required the landlord to clean up the exterior of the property, including trash and fallen trees. (*Id.*)

Mr. Thomas testified that the landlord did not take any action on the clean-up order, but sought to evict him and Noella for nonpayment of rent. (*Id.* 22:05–09; 22:23–23:20.) Frustrated that the landlord was not acting on the clean-up order, Mr. Thomas and Noella called the City of Circleville and were informed that the filing of eviction proceedings stayed enforcement of the clean-up order. (*Id.* 23:21–24:10.)

### A.    Mr. Thomas's encounter with the Officers on March 22, 2023.

Soon after, Mr. Thomas and Noella went to the City's Administrative Building to get more information about the status of the clean-up order. (*Id.* 26:04–08.) At first, only Mr. Thomas went into the building and spoke to a woman at the front desk. (*Id.* 26:09–26:24.) When the woman told him that she needed to get the file on his property from a back room, Mr. Thomas became suspicious that she was not being honest with him and he returned to his car to get his cell phone

2

to record the interaction. (*Id.*) He returned with a cellphone, and Noella, but he did not see the woman at the front desk. (*Id.*)

The woman at the front desk had contacted the Circleville Police Department and requested assistance because Mr. Thomas was raising his voice at her. (Farrelly Aff., ECF No. 40-1, ¶¶ 3–5.) Officers Jon Farrelly and Ryan Speakman were dispatched to the Administrative Building and arrived soon after. (*Id.*; *see also* Thomas Dep., 28:13–16.) They arrived with their body-worn cameras activated and their interactions with Mr. Thomas were recorded. (Farrelly Aff., ¶ 20; Speakman Decl., ¶ 5; Speakman Body Camera (March 22), ECF No. 42-1; *see also* ECF No. 49.[2])

When the officers approached Mr. Thomas to ask him what was going on, he told them that the property where he was living with his children did not have running water or electricity. (Speakman Body Camera (March 22), 13:43:50–60; Thomas Dep., 40:21–41:12.) As the officers asked more questions to determine how they could assist, Mr. Thomas became agitated and began yelling at them. (*Id.* 13:52:40–53:56; Farrelly Aff., ¶¶ 13–16.) The officers asked Mr. Thomas to lower his voice and warned that if he did not, they would escort him away from the building. (*Id.* 13:58:09–58:45.) When he did not lower his voice, the officers told him that he was in a public building and causing annoyance or alarm, and if he did not stop, he would be arrested for disorderly conduct. (*Id.*) Mr. Thomas then called the officers corrupt and left. (*Id.* 13:59:00–14:00:00; Farrelly Aff., ¶ 18; Thomas Dep., 40:2–08.) Officer Speakman continued to discuss the situation with Noella for several minutes. (*Id.* 14:00:00–14:08.) From outside the building, Mr. Thomas began streaming a Facebook Live video in which he accused the officers of being corrupt and not doing

---

[2] Mr. Thomas manually submitted five exhibits in CD format of body worn camera footage and footage that he recorded with his cell phone. (*See* ECF No. 49 (Exhibits B ("Wellbeing"), C ("Administrative Bodycam"), D ("Follow Up"), E ("Follow Up"), and F ("Plaintiff's Cell Phone")).)

their jobs. (Thomas Dep., 38:23–40:12.) Mr. Thomas was not arrested or charged with any crimes arising out of this interaction on March 22, 2023. (*Id.* 62:10–12, 104:01–22; Speakman Decl., ¶ 9; Farrelly Aff., ¶ 22.)

After Mr. Thomas left the building, the officers contacted the City of Circleville Service Director to understand the status of the clean-up order and whether the property had utilities. (Farrelly Aff., ¶¶ 24–25.) The officers discussed with the Service Director whether the home needed to be condemned because of Mr. Thomas's report that it did not have water, heat, or electricity, and that children were present in the home. (*Id.* ¶ 26; Speakman Body Camera (March 22), 14:14:01–14:14:54.) Officers Speakman and Farrelly planned to visit the home the next morning to confirm whether the utilities were in fact off, and to tell the occupants that they needed to vacate the home. (*Id.* ¶¶ 27–30; Speakman Body Camera (March 22), 14:21:15–14:22:02.)

**B.** **Mr. Thomas's encounter with the Officers on March 23, 2023.**

Before going to the property on March 23, 2023, the officers called the utility companies and learned that the power and water were turned on at the home. (*Id.* ¶ 29.) The officers then went to the property to verify that the home had running water and electricity. (*Id.* ¶ 30.) They spoke first with Noella and her father outside the home and confirmed that there was running water and electricity at the property. (*Id.* ¶ 31; Speakman Body Camera (March 23), ECF No. 42-1, 10:41:05–43:34.) Since the utilities were working, the officers determined that there was no need to vacate or condemn the property. (*Id.* ¶ 33.)

Mr. Thomas then approached the officers from his car and asked why the officers were at the property. (*Id.* ¶¶ 34, 36; Speakman Body Camera (March 23), 10:43:41–55.) The officers explained that they were conducting a welfare check because he reported that the house did not have power or water. (*Id.* ¶ 37; Speakman Body Camera (March 23), 10:43:41–55.) Mr. Thomas

4

accused the officers of "being nosy for the City" and again stated that the house did not have water or power. (*Id.* ¶¶ 38–41: Speakman Body Camera (March 23) 10:44:10–44:46.) Officer Speakman then responded that because Mr. Thomas stated that the home did not have running water or electricity, he had to contact Children Protective Services ("CPS") to come to the home and do a well-being check. (*Id.* ¶ 42; Speakman Body Camera (March 23) 10:45:19–45:45.) A few minutes later, a representative from CPS arrived but Mr. Thomas would not allow her to enter the home, and she left. (*Id.* ¶¶ 45–46; Speakman Body Camera (March 23) 10:53:30–58:54.) Soon after, the officers also left the property. (*Id.* ¶ 48.)

The officers did not arrest or detain Mr. Thomas. (*Id.* ¶ 49.) CPS did not remove the children from the home and Officer Farrelly represents that he "never filed any reports nor had any other communication with [CPS] regarding Mr. Thomas or [the] interaction on March 22–23, 2023." (*Id.* ¶ 50; *see also* Speakman Decl., ¶¶ 9–10.) He did not transmit to the County or City Prosecutor "any charges, reports[,] or complaints to be filed against Mr. Thomas for anything related to the interactions on March 22–23, 2023" and he is "not aware of any other officers requesting that the City or County prosecutor pursue charges[.]" (*Id.* ¶ 54; Speakman Decl., ¶¶ 9–10.) During his deposition, Mr. Thomas conceded that he did not have any evidence to suggest the officers reported child abuse to CPS. (Thomas Dep., 80:01–80:14.)

That said, Mr. Thomas continued to criticize Officers Speakman, Farrelly, and Doug Davis, Deputy Chief of Police for the Circleville Police Department. (*Id.* 83:17–84:07.) Deputy Chief Davis was not present for the interactions between the officers and Mr. Thomas, and Mr. Thomas admitted that he has never spoken with him. (*Id.* 77:09–78:24.) Mr. Thomas names Deputy Chief Davis because he claims that the officers said that their supervisor, whom he understood to be Deputy Chief Davis, sent them to his home on March 23, 2023. (*Id.* 79:10–24.) Defendants explain

that the body camera footage reflects neither officer stating that Deputy Chief Davis sent them to

Mr. Thomas's home. (*See* Speakman Body Camera (March 23).)

## II.  Procedural Background

Mr. Thomas initiated this lawsuit on May 1, 2023 when he applied to proceed *in forma pauperis*. (ECF No. 1.) His application was granted, and his complaint was electronically filed. (ECF Nos. 3, 4.) Mr. Thomas alleges that the officers engaged in a policy or practice of deliberate indifference to constitutional rights, retaliated against him, filed a false statement or affidavit for probable cause, and a false report of child abuse, in violation of the First, Fourth, and Fourteenth Amendments, as well as several state laws. (ECF No. 4.)

After performing an initial screen of Mr. Thomas's Complaint, the Magistrate Judge recommended dismissal of all his claims except for (1) his First Amendment retaliation claim against Defendants Speakman, Farrelly, and Davis and (2) his state-law claim under Ohio Revised Code § 2307.60 against Defendants Speakman, Farrelly, and Davis. (R&R, ECF No. 5.) The Magistrate Judge recommended that the Circleville Police Department and the City itself should be dismissed because the police department is not a legal entity that can be sued, and the claims against the City fail to state a plausible claim for relief. (*Id.* PageID 107.[3]) This Court affirmed the Magistrate Judge's recommendations. (ECF No. 6.) Defendants now move for summary judgment on Mr. Thomas's two surviving claims. (*See* Mot.; Speakman Mot.)

---

[3] Defendant City of Circleville states that "[w]hile it appears all claims against the City [] were previously dismissed by the Court, to the extent that the Court believes the City [] remains a party, the City hereby moves for dismissal." (Mot., PageID 400 n.1.) The Magistrate Judge's initial screen, adopted by this Court, dismissed the claims against the City for failing to state a plausible claim for relief, including Mr. Thomas's claim for violations of Ohio Revised Code § 2307.60. (*See* ECF Nos. 5, 6.) Thus, Mr. Thomas's claims against the City were previously dismissed. (*Id.*)

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1389 (6th Cir. 1993). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014).

A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (awarding summary judgment when the evidence could not lead a jury to find for the nonmoving party).

## ANALYSIS

Defendants argue that Mr. Thomas has failed to show that genuine issues of material fact exist regarding his First Amendment retaliation claim or his state-law claim. Because the evidence before the Court could not lead a reasonable jury to return a verdict for Mr. Thomas on either claim, Defendants contend that the Court should award summary judgment in their favor. The Court addresses Mr. Thomas's First Amendment retaliation claim before turning to his state-law

claim for criminal conduct. To the extent that Defendant Speakman's Motion overlaps with Defendants Davis and Farrelly's Motion, the Court addresses the legal arguments together.

## I. Defendants are entitled to summary judgment on Mr. Thomas's First Amendment retaliation claim.

Mr. Thomas alleges that Officers Speakman and Farrelly went to his house on March 23, 2023 to retaliate against him for posting a Facebook live video accusing the officers of corruption. (*See* ECF No. 4.) He asserts a claim against all Defendants in their individual capacities under 42 U.S.C. § 1983 for violating his First Amendment rights. (*Id.*) Section 1983 creates a cause of action against any person who, acting under color of state law, abridges the rights, privileges, or immunities secured by the Constitution and laws. 42 U.S.C. § 1983. To establish a § 1983 claim, a plaintiff must show that (1) a deprivation of rights secured by the Constitution or laws of the United States occurred and (2) was caused by a person acting under color of state law. *Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013) (citation omitted). Defendants argue that Mr. Thomas's § 1983 cause of action fails as a matter of law because he cannot show a violation of his rights.

To establish a claim for First Amendment retaliation, Mr. Thomas must prove that "(1) [he] engaged in constitutionally protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by [his] protected conduct." *Mezibov v. Allen*, 411 F.3d 712, 717 (6th Cir. 2005) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)).

Officer Speakman argues that Mr. Thomas cannot establish any of the three elements to survive summary judgment, while Officer Farrelly and Deputy Chief Davis contest only the second and third elements. Officer Speakman also argues that he is entitled to qualified immunity. Because

the Court finds that Mr. Thomas's First Amendment retaliation claim fails as a matter of law, the Court need not determine whether Officer Speakman is entitled to qualified immunity.

### A. Mr. Thomas engaged in constitutionally protected speech.

Officer Speakman argues that Mr. Thomas was not engaged in protected conduct when he accused the officers of being corrupt in various social media posts. (*See* Speakman Mot., PageID 439–40.) Because Mr. Thomas knew the statements were false, Officer Speakman argues that Mr. Thomas's speech should not be protected. (*Id.*)

Mr. Thomas responds that he was "conducting a peaceful protest against the misconduct by City officials." (Opp., PageID 572.) He asserts that he has a right "to film government officials." (*Id.*) Officer Speakman replied that because Mr. Thomas cannot produce evidence to support a finding that Officer Speakman was corrupt, he is not entitled to protection under the First Amendment. (Reply, PageID 609.)

But even if the Court found that Mr. Thomas's statements were protected, his First Amendment retaliation claim still fails as a matter of law because he has failed to show a genuine issue of material fact on the other elements. The Court assumes without deciding that Mr. Thomas's statements were protected. *See, e.g.*, *Abdulsalaam v. Franklin Cty. Bd. of Comm'rs*, 637 F. Supp. 2d 561, 579 (S.D. Ohio 2009) (Marbley, J.) (citing *Jenkins v. Rock Hill Loc. Sch. Dist.*, 513 F.3d 580, 588 (6th Cir. 2008)) (explaining that the right to criticize public officials is protected by the First Amendment). But since Mr. Thomas has not put forth sufficient evidence for a reasonable jury to conclude that he suffered an adverse action, he cannot satisfy the second and third elements of his claim.

**B.**     **Mr. Thomas fails to raise a genuine issue of material fact that he suffered an adverse action.**

To establish a retaliation claim, Mr. Thomas must show that an adverse action was taken against him. An action is adverse if it would "deter a person of ordinary firmness from the exercise of the right at stake." *Thaddeus*-X, 175 F.3d at 396–97. Actions that are "inconsequential" or cause "de minimis injury" are not adverse actions. *Anders v. Cuevas*, 984 F.3d 1166, 1177 (6th Cir. 2021) (quoting *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 584 (6th Cir. 2012)). Sufficiently adverse actions may include "harassment or publicizing facts damaging to a person's reputation." *Wurzelbacher*, 675 F.3d at 583–84. But to allow plaintiffs to bring claims for any adverse action, no matter how minor, would trivialize the First Amendment. *Id.* (quotation omitted).

Mr. Thomas claims that Officers Speakman and Farrelly threatened to charge him with disorderly conduct if he did not exit the Administrative Building on March 22, 2023. (Opp., PageID 575.) So, he left and began filming a Facebook live video outside. (*Id.*) In response to the video calling the officers corrupt, Mr. Thomas alleges that the officers took adverse action against him by filing criminal charges against him and a false report with CPS. (*Id.* PageID 576–80.) He explains that just because the officers failed to remove the children from his home, "does not change the fact" that adverse action was taken against him. (*Id.* at PageID 576, 579.) Calling CPS when Mr. Thomas informed the officers that the home did not have running water or electricity, was according to Mr. Thomas, also an adverse action. (*Id.* PageID 581.)

But during his deposition, Mr. Thomas conceded that he was not arrested, detained, or charged with any crimes arising out of his encounter with the officers on March 22, 2023, or March 23, 2023. (Thomas Dep., 58:01–05; 62:10–12, 104:01–22.) Officers Speakman and Farrelly both maintain that they never reported Mr. Thomas for child abuse to CPS or to the City or County Prosecutors. (Farrelly Aff., ¶¶ 50, 54; Speakman Decl. ¶¶ 10–11.) Mr. Thomas confirmed that he

had never seen a copy of any such report and that his children were not removed from the home. (Thomas Dep., 58:01–05 (stating that he is unaware of a report); 59:02–05 (testifying that he has custody of his children).)

Even though his children were not removed, and he was not arrested, Mr. Thomas alleges that he still suffered an injury in the form of emotional distress. (Thomas Dep., 88:23–89:24.) He claims that he has a "fear of dealing with the cops" and that he does not "get a fair shot" when he must interact with the officers about "something legitimate." (*Id.* 89:04–05; 89:18–22.) But Mr. Thomas cites no case law that found similar claims of emotional distress amounted to more than an inconsequential injury or would have "deter[ed] a person of ordinary firmness from the exercise of the right at stake." *Thaddeus*-X, 175 F.3d at 396–97.

While the Sixth Circuit has held that embarrassment and humiliation may be sufficient to establish a First Amendment violation, not all allegations of emotional injury are sufficient. *Wurzelbacher*, 675 F.3d at 584–85 (collecting cases). The officers had professional obligations to conduct a welfare check after Mr. Thomas reported that the home, where his children lived, was inhabitable because it did not have running water or electricity. (Farrelly Aff., ¶¶ 42–44.) The officers assert that they decided to visit the property immediately after their interaction with Mr. Thomas and before they knew he posted a Facebook live accusing them of corruption. (*Id.* ¶ 27.) Officer Speakman's body worn camera footage supports that the officers discussed the property and decided to visit home immediately after their interaction with Mr. Thomas on March 22, 2023. (Speakman Body Camera (March 22), 14:14:01–54; 14:21:15–14:22:02.)

When video footage capturing the events in question is available, the Court must view the facts in the light depicted by the video. *Green v. Throckmorton*, 681 F.3d 853, 859 (6th Cir. 2012) (quoting *Scott v. Harris*, 550 U.S. 372, 378–81 (2007)). So, although normally Mr. Thomas's

version of the facts—that the officers visited his home on March 23 in retaliation for his Facebook live video—would be accepted as true when deciding Defendants' Motion for Summary Judgment, here, Mr. Thomas's accusations are contradicted by video evidence in the record. Because the video contradicts his version of the events, the video can support a grant of summary judgment. *Lee v. City of Norwalk*, 529 F. App'x 778, 782 (6th Cir. 2013).

Without minimizing the fears experienced by Mr. Thomas, this Court finds that his injury is not the type of consequential adverse action that would deter a person of ordinary firmness from exercising his or her rights under the First Amendment. *Thaddeus*-X, 175 F.3d at 396–97. Mr. Thomas was not deterred by the allegedly adverse action and continued to make social media posts accusing the officers of wrongdoing and corruption. (Thomas Dep., 83:10–84:3.) In fact, when asked at his deposition if he worried about or feared retaliation for calling the officers corrupt, he responded, "why would I?" and explained that he was "going to keep doing what I [am] doing because its freedom of speech." (*Id.* 86:1–16.)

Accordingly, Mr. Thomas failed to raise a genuine issue of material fact about the second element of his First Amendment retaliation claim. Since he cannot show that he suffered an adverse action by Officer Speakman, Farrelly, or Deputy Chief Davis, he cannot prove the third element— that the adverse action was motivated, at least in part, by a retaliatory motive. Accordingly, Mr. Thomas's First Amendment relation claim fails as a matter of law.

## II.    Defendants are entitled to summary judgment on Mr. Thomas's state-law claim under Ohio Revised Code § 2307.60.

Mr. Thomas also brings a claim under Ohio Revised Code § 2307.60 for civil damages caused by criminal acts. (*See* ECF No. 4 (Count VII).) Mr. Thomas alleges that Defendants interfered with his civil rights, in violation of Ohio Revised Code § 2921.45, and filed a false report of child abuse in violation of Ohio Revised Code § 2921.14. (*Id.*; *see also* R&R.) He argues both

12

violations were criminal, and that he is entitled to civil damages. (*Id.*) Defendants argue that Mr. Thomas cannot show that they engaged in a criminal act, and even if he could, they are entitled to immunity as employees of a political subdivision under Ohio Revised Code § 2744.03.

The Supreme Court of Ohio has held that "§ 2307.60 creates a civil cause of action for damages resulting from any criminal act, unless otherwise prohibited by law." *Jacobson v. Kaforey*, 75 N.E.3d 203, 207 (Ohio 2016). Proof of an underlying criminal conviction is not required. *Buddenberg v. Weisdack*, 161 N.E.3d 603, 605 (Ohio 2020) (citation omitted).

"The Ohio immunity statute, [Ohio Revised Code] § 2744.03, creates a presumption of immunity for official government acts carried out by political subdivisions and their employees." *Townsend v. City of Kettering*, 194 N.E.3d 457, 464 (Ohio Ct. App.). There are three exceptions to the presumption of immunity: (1) the employee's acts or omissions were manifestly outside the scope of the employee's employment; (2) the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) civil liability is expressly imposed on the employee under Ohio law. Ohio Rev. Code § 2744.03(A)(6)(a)–(c).

It is undisputed that Officers Speakman, Farrelly, and Deputy Chief Davis are employees of a political subdivision. In the initial screen of Mr. Thomas's Complaint, the Magistrate Judge construed Mr. Thomas's state-law claim as putting forth sufficient allegations that Defendants could be held liable under the second exception by acting in bad faith or with malicious intent in making false statements during a child abuse investigation. (R&R, PageID 121.) Mr. Thomas did not object the Magistrate Judge's Report and Recommendation and he does not put forth any allegations that Defendants were acting outside the scope of their employment, or that civil liability is expressly imposed on Defendants under Ohio law. (ECF No. 6; *see also* Opp.) Thus, the Court will analyze Defendants state-law liability under the second exception.

13

Defendants argue that Mr. Thomas has offered no evidence that Defendants acted maliciously, in bad faith, or in a wanton or reckless manner. (Speakman Mot., PageID 445–47; Mot., PageID 414–15.) Under Ohio law, "malicious purpose" is defined as "the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct that is unlawful or unjustified." *Ellis v. Timm*, 504 F. Supp. 3d 726, 741 (N.D. Ohio 2020) (citation omitted). Wanton misconduct is "the failure to exercise any care toward those whom a duty of care is owed in circumstances in which there is a great probability that harm will result." *Ruffin v. Cuyahoga Cty.*, No. 1:16 CV 640, 2017 U.S. Dist. LEXIS 102199, at *42 (N.D. Ohio June 30, 2017) (quoting *Anderson v. City of Massillon*, 983 N.E.2d 266, 273 (Ohio 2012)). Recklessness is "characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.* (citation omitted).

Mr. Thomas has not produced evidence that Defendants' actions meet any of these definitions. In fact, Mr. Thomas failed to address Defendants' arguments that they are entitled to immunity as employees of a political subdivision. (*See* Opp.) Instead, the evidence, including the body worn camera footage, shows that the officers acted appropriately under the circumstances. Because the video evidence contradicts Mr. Thomas's version of the events, and Mr. Thomas cannot show that the officers' actions stemmed from wanton, reckless, or malicious acts, he cannot overcome the presumption of immunity. *Lee*, 529 F. App'x at 782 (concluding video footage supports a grant of summary judgment against the nonmovant); *see also Green*, 681 F.3d at 859 (explaining that the Court must view the facts in the light depicted by the video footage, when such footage is available). As a result, Defendants are entitled to immunity and his state-law claim fails.

14

## CONCLUSION

For the reasons above, the Court **GRANTS** Defendant Ryan Speakman's Motion for Summary Judgment (ECF No. 42) and **GRANTS** Defendants the City of Circleville, Jon Farrelly, and Doug Davis's Motion for Summary Judgment (ECF No. 40).

The Clerk is directed to enter judgment and close this case.


**IT IS SO ORDERED.**

**2/18/2025**                                        **s/Edmund A. Sargus, Jr.**
**DATE**                                             **EDMUND A. SARGUS, JR.**
                                                     **UNITED STATES DISTRICT JUDGE**